UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

JUANITA B.[1]

          Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

Case No. 1:23-cv-01024-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Juanita B. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying plaintiff's application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401–33.  This

court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§

405(g) and § 1383(c)(3).  For the reasons set forth below, that decision is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff protectively filed an application for disability insurance benefits on July 10,

2020, alleging a disability onset date of July 6, 2020.  Tr. 201–04.  The Commissioner

denied plaintiff's claim on January 20, 2021, and again upon reconsideration on April 23,

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
plaintiff's last name.

2021.  Tr. 67, 88.  Plaintiff filed a written request for a hearing on June 7, 2021, and a

hearing was held before Administrative Law Judge John Sullivan on November 8, 2021.  Tr.

61–66.  Plaintiff appeared *pro se* at the hearing in November 2021, and the ALJ postponed

the hearing to allow plaintiff to retain legal counsel. Tr. 63–66.  On February 14, 2022, a

second hearing was held before ALJ Sullivan, who then postponed the hearing to allow for

further development of the record.  Tr. 52–60.  A third hearing was held on August 10,

2022, before ALJ Sullivan. Tr. 28–51. The ALJ issued a decision, finding plaintiff not

disabled within the meaning of the Act.  Tr. 13–22.  The Appeals Council denied plaintiff's

request for review on January 26, 2023.  Tr. 1–6.  Thus, the ALJ's decision is the

Commissioner's final decision and subject to review by this court.  42 U.S.C. § 405(g); 20

C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C.

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the

evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by

isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-

10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This

court may not substitute its judgment for that of the Commissioner when the evidence can

reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746

(9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational

interpretation, the Commissioner's decision must be upheld if it is "supported by inferences

reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity from her alleged onset date of July 6, 2020, through her date last insured, September 30, 2021. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: status post hysterectomy with residual abdominal pain, somatoform disorder, obesity, persistent depressive disorder, and anxiety disorder. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 16. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 404.1567(b), with conditions that she can perform tasks involving up to six hours of sitting, and up to six hours of standing/walking in an eight-hour workday (with normal breaks), she can never climb ladders, ropes, or scaffolds, she must avoid exposure to workplace hazards, including unprotected height, moving mechanical parts, or operation of a motor vehicle, she can understand, remember, and carry out no more than simple,

routine, instructions involving simple work-related decision-making, she can tolerate occasional interaction with supervisors, co-workers, or the public, and she would be off-task no more than five percent of an eight-hour workday (in addition to normal breaks). Tr. 17.

At step four, the ALJ found plaintiff is able to perform her past relevant work as a housekeeper. Tr. 20.

The ALJ additionally made alternative step five findings, i.e., the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including production assembler, small products I assembler, and small products II assembler. Tr. 21. Thus, the ALJ concluded plaintiff was not disabled at any time from July 6, 2020, through October 19, 2022, the date of the decision. Tr. 22.

## DISCUSSION

Plaintiff argues the ALJ erred in finding the medical opinion by Dr. Kristine Groskopp, D.O., was unpersuasive. Pl. Br. 5, ECF 9. Plaintiff also argues the ALJ erred in rejecting her subjective symptom testimony. *Id.* at 10.

### I.      Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, the ALJ must apply 20 C.F.R. § 404.1520c for Title II claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867–68; *see also* 20 C.F.R. §§ 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of

medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process.  20 C.F.R. §§ 404.1520c(c).  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence."  *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)).  Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim."  *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the medical opinions are and explain how the supportability and consistency factors are considered.  20 C.F.R. §§ 404.1520c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020).  "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements."  *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020).  However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical."  *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20

C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).  Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence.  *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

Dr. Groskopp diagnosed plaintiff with chronic pelvic and perineal pain, and opined that she needs to lie down and rest for at least thirty minutes four to five times a day and take at least two to three thirty-minute unscheduled breaks during an eight-hour workday.  Tr. 652, 654.  Dr. Groskopp further opined that plaintiff can stand or walk for thirty minutes at a time for a total of three hours in an eight-hour workday, and can lift or carry no more than ten pounds occasionally. Tr. 653, 654.  She opined that plaintiff would be off task at least twenty-five percent of an eight-hour workday and absent more than four workdays per month due to her pelvic and abdominal pain.  Tr. 655.

The ALJ found Dr. Groskopp's opinion was "not persuasive" and that her "contemporaneous treatment notes yielded no reasonable support for [her] opinion regarding the likelihood of excessive workplace absenteeism."  Tr. 20.  The ALJ observed that Dr. Groskopp repeatedly noted plaintiff presented in "no acute distress."  *Id.*  The ALJ also cited Dr. Groskopp's treatment note from March 2022, where plaintiff reported her functioning was "not difficult at all."  *Id.* (citing Tr. 1030).  The ALJ acknowledged that "this certainly does not mean [plaintiff] was free from pain or mental symptoms, but rather that she was able to cope with her symptoms with appropriate treatment."  *Id.*  The ALJ also reasoned that by June 2022, plaintiff's pain symptoms were deemed "labile" and "based on activity."  *Id.* (citing Tr. 995).  Lastly, the ALJ discussed how plaintiff "demonstrated normal behavior, thought content, and judgment"

within a clinical setting, and she was "reportedly pleasant and cooperative despite abdominal tenderness and guarding." *Id.* (citing Tr. 997).

Plaintiff contends the evidence cited by the ALJ does not support the ALJ's reasoning. Plaintiff first argues that the March 2022 treatment note where she reported her daily functioning was not "difficult at all" pertains only to the impact of depression on her daily functioning, not her chronic abdominal and pelvic pain. Pl. Br. 7, ECF 9 (citing Tr. 1030–31). To support this contention, plaintiff explains that this note is listed under the heading "follow up of depression." *Id.* The Commissioner argues that this note was made in the context of plaintiff's chronic pain because Dr. Groskopp treats both plaintiff's physical and mental health conditions together. Def. Br. 9, ECF 11.

Looking at the treatment note, it is evident that Dr. Groskopp was evaluating both plaintiff's depression and physical health symptoms together. Tr. 1030–31. Dr. Groskopp specifically observed that plaintiff's depression "is associated with chronic pain and headache." Tr. 1031. Dr. Groskopp also noted that plaintiff exhibited no side effects from her medication regimen and that plaintiff "hasn't noticed a . . . substantial change in pain levels either." *Id.* Plaintiff reported that she "has more energy" and it takes "less effort to do the things she has to do." *Id.* Thus, it is clear that Dr. Groskopp's observations from March 2022 pertain to both plaintiff's mental and physical health.

Plaintiff next argues the ALJ erred in discrediting Dr. Groskopp's opinion based on a June 2022 chart note that states her "pain is labile and based on activity." Pl. Br. 7, ECF 9 (citing Tr. 995). Plaintiff points to another portion of this chart note, which states that she "describes the pain as aching, cramping, sharp, shooting, and stabbing" and "[m]ost active activities cause an increase in pain while medications can reduce pain as does rest." Tr. 995.

7 – OPINION AND ORDER

Plaintiff argues "[t]his supports Dr. Groskopp's opinion that [she] was able to maintain only sedentary exertion with opportunities to change positions and rest throughout the day." Pl. Br. 9, ECF 9. The ALJ did not ignore this evidence or plaintiff's subjective complaints. The ALJ elsewhere noted that plaintiff's "subjective complaints and corresponding clinical signs are well documented and reasonably justify certain physical limitations." Tr. 19; *see also id.* (observing that plaintiff "indicated in mid-2021 that her pelvic discomfort continued to make it difficult to sit, stand, or exercise"). The ALJ concluded that the 2022 evidence "certainly does not mean the claimant was free from pain or mental symptoms," but indicated "she was able to cope with her symptoms with appropriate treatment." Tr. 20. And the ALJ accounted for such limitations in the RFC. Tr. 17.

Plaintiff argues that the ALJ failed to "thoroughly evaluate [her] functioning throughout the full adjudicatory period," instead relying on "more recent evidence of reported improvement." Pl. Br. 10, ECF 9. Plaintiff contends that "the longitudinal medical record supports and is consistent with Dr. Groskopp's informed opinion." *Id.* In particular, plaintiff cites to evidence of significant post-operative pain following her 2020 hysterectomy, medical records from 2021 in which plaintiff describes her pain as aching, stabbing, unbearable, throbbing, shooting, miserable, and sharp, and unsuccessful treatment with physical therapy, chiropractic care, and narcotic medications. *Id.* (citing Tr. 611-13).

The ALJ indeed considered the longitudinal record in this case and pointed to specific portions of the record that undermined Dr. Groskopp's opinion and plaintiff's complaints. The ALJ observed that "[m]edical records contemporaneous to the alleged onset date document [plaintiff's] subjective complaints of post-operative pelvic pain following a January 2020 hysterectomy." Tr. 18. The ALJ noted that lidocaine treatment had helped ease plaintiff's

symptoms temporarily, and that she was prescribed Norco; however, plaintiff presented in "no apparent distress." *Id.* (citing Tr. 344). The ALJ also discussed a September 2020 medical visit in which plaintiff complained that her pubic area was "very tender." Tr. 18; *see* Tr. 504. The ALJ observed, however, that Dr. Groskopp indicated no visible abnormalities in that area, the four extremities appeared normal, and plaintiff again presented with no acute distress or apparent deficits in her cognition or mood. Tr. 18; *see* Tr. 504; *see also* Tr. 526 (November 2020 chart notes indicating: "Strength and sensation is normal in the bilateral upper and lower extremities, although patient complains of slight tingling in the left upper extremity.").

The ALJ further cited to records by Dr. Mike Henderson following a December 2020 motor vehicle accident in which Dr. Henderson observed that plaintiff presented without any significant pain behavior, demonstrated 5/5 motor strength in all extremities, ambulated with a normal gait, and, despite her complaints of chronic pelvic pain, exhibited "no significant difficulties sitting for at least 15 minutes." Tr. 19 (citing Tr. 476). Dr. Henderson made these observations with the knowledge that plaintiff had reported a history of pelvic pain following her hysterectomy. Tr. 476. Dr. Henderson observed that, despite plaintiff's history of pelvic pain, "[t]here are no difficulties noted with gait" and "no significant difficulties sitting for at least 15 minutes." *Id.*

The ALJ also observed that plaintiff continued to complain of pelvic pain in 2021 and reported recurring pain in April 2021 following her surgery for a left ovarian cyst. Tr. 19 (citing 602). But the ALJ pointed to subsequent records from 2021, including statements plaintiff made to her treatment provider in June 2021 indicating that she experienced significant pain relief from her prescribed medications without any side effects, and acknowledged that she could perform activities of daily living, including washing dishes, preparing meals, and cleaning her house. Tr.

19 (citing Tr. 620).  Indeed, in June 2021, plaintiff described that, with "the current treatment plan," her pain level was "3-4" and was "distracting or annoying but tolerable."  Tr. 620.  Plaintiff also reported no side effects associated with her current medications.  Tr. 621.  The ALJ further pointed to Dr. Groskopp's records, which repeatedly stated that plaintiff did not appear in "acute distress," and indicated that plaintiff's daily functioning was "not difficult at all" in early 2022.  Tr. 20 (citing Tr. 1030).

Finally, plaintiff points to the report by Thomas Shields, PhD, in which he observed that her "gait [was] slow and marked with mild pain behavior," her "gross psychomotor activity appear[ed] moderately agitated secondary to pain behavior," she frequently shifted around in her seat, and she was "mildly distracted" by her pain symptoms."  *Id.* (citing Tr. 387).  Dr. Shields made clear that he "was not qualified to comment on [plaintiff's] health," but diagnosed plaintiff with somatic symptom disorder, among other diagnoses.  Tr. 389.  He observed that plaintiff "appear[ed] distracted by her somatic pain and exhibit[ed] moderate pain behavior," which was "likely to cause some difficulty with respect to her ability to understand, remember, and carry out detailed/complex instructions," and she was "likely to experience occasional difficulty sustaining concentration on tasks over extended periods of time."  *Id.*  Similarly, plaintiff's "pain-related distractibility could negatively impact her ability to persist effectively."  *Id.*

The ALJ made clear that he had considered Dr. Shields's report.  Tr. 20.  The ALJ cited to Dr. Shields's observations that plaintiff "demonstrated the capability to understand, remember, and carry out short and simple instructions despite some apparent distractibility from her somatic pain symptoms."  *Id.*  To account for this, the ALJ limited plaintiff to "simple, routine instructions involving simple work-related decision-making" in the RFC.  Tr. 17.

Thus, it is evident that the ALJ considered the longitudinal record in this case. Plaintiff argues for a different interpretation of the record; however, because the ALJ's interpretation of the evidence is rational, it must be upheld. *Tommasetti*, 533 F.3d at 1038 (9th Cir. 2008).

## II.   Subjective Symptom Testimony

Plaintiff argues the ALJ failed to identify specific, clear and convincing reasons supported by substantial evidence to reject her subjective symptom testimony. Pl. Br. 10–13, ECF 9. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's

record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must

examine "the entire case record, including the objective medical evidence; an individual's

statements about the intensity, persistence, and limiting effects of symptoms; statements and

other information provided by medical sources and other persons; and any other relevant

evidence in the individual's case record." *Id.* at *4.

The ALJ concluded that plaintiff's symptoms were "not entirely consistent with the

medical evidence." Tr. 18. In evaluating a claimant's subjective symptom testimony, an ALJ

may consider whether it is consistent with objective medical evidence. 20 C.F.R.

§§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8.

The lack of objective medical evidence may not form the sole basis for discounting a claimant's

testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505,

at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he

Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence.")). However, "[w]hen objective

medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ

may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th

Cir. 2022) (emphasis in original). Here, the ALJ explained the inconsistencies in detail, as

discussed extensively above. This constitutes a sufficient, clear and convincing reason to

discount plaintiff's subjective symptom testimony.

It is not necessary to reach this issue, but the ALJ also rejected plaintiff's subjective

complaints based on activities of daily living. The ALJ observed that plaintiff complained that

her recurring pain symptoms made it difficult for her to sit or stand for prolonged periods;

however, the ALJ found that "[n]otwithstanding her discomfort, she acknowledged she could

12 – OPINION AND ORDER

still care for her children, prepare meals, and perform household chores like cleaning and laundry[,]" "[h]er symptoms did not prevent her from leaving her home alone, driving a vehicle independently, or going shopping in stores when necessary," and "[w]hile her pain symptoms curtailed some recreational activities, she indicated she enjoyed reading and watching television daily." Tr. 18. An ALJ may consider a claimant's activities of daily living in assessing whether those activities contradict the claimant's testimony about symptoms or functional limitations. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Again, however, only one clear and convincing reason is sufficient to reject a claimant's subjective symptom testimony; therefore, it is sufficient that the ALJ relied on the inconsistencies with the medical evidence.

Plaintiff argues the ALJ failed to identify the testimony the ALJ found was not credible and explain what evidence undermines that testimony. Pl. Br. 12, ECF 9 (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020)). As plaintiff observes, the Ninth Circuit has held that "the ALJ must specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

The ALJ did so here. Plaintiff argues that a more extensive analysis is required, but the "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" *Lambert*, 980 F.3d at 1277. The ALJ provided sufficient reasoning for the court to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence. *See Young v. Saul*, 845 F. App'x 518, 519 (9th Cir. 2021) (rejecting the argument that "by failing expressly to

13 – OPINION AND ORDER

mention Young's assertion that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby overlooked that testimony and failed to give reasons to discount it"; "The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony[.]"); *Cooper v. Kijakazi*, 2022 WL 1553170, at *1 (9th Cir. May 17, 2022) (finding that, "although Cooper would have preferred a more granular point-by-point refutation of her testimony, '[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits'").

## ORDER

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

DATED July 22, 2024.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge
